IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DEBORAH LYNN JONES,**                    Case No. 1:17 CV 662

      Plaintiff,

      v.                                  Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

      Defendant.                          MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Deborah Lynn Jones ("Plaintiff") filed a Complaint against the Commissioner of
Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny
disability insurance benefits ("DIB"), supplemental security income ("SSI"), and disabled
widow's benefits ("DWB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§
1383(c) and 405(g). The parties consented to the undersigned's exercise of jurisdiction in
accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 6). For the reasons stated below, the
undersigned affirms the decision of the Commissioner.

### PROCEDURAL BACKGROUND

Plaintiff filed for DIB, SSI, and DWB in August 2013, alleging a disability onset date of
September 1, 2008. (Tr. 259, 266, 272-73). Her claims were denied initially and upon
reconsideration. (Tr. 125-27, 164-66). Plaintiff then requested a hearing before an administrative
law judge ("ALJ"). (Tr. 201). Plaintiff (represented by counsel), and a vocational expert ("VE")
testified at a hearing before the ALJ on September 15, 2015. (Tr. 34-82). On October 14, 2015,
the ALJ found Plaintiff not disabled in a written decision. (Tr. 16-28). The Appeals Council denied

Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-3); *see* 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. Plaintiff timely filed the instant action on March 28, 2017. (Doc. 1).

**FACTUAL BACKGROUND**

<u>Personal Background and Testimony</u>

Plaintiff was born in August 1958, making her 50 years old at her alleged onset date, and 57 at the time of the ALJ's decision. *See* Tr. 259. She had a GED and some college. (Tr. 39). She had past work as a cleaning supervisor, customer service representative, head cashier, and machine parts cleaner. *See* Tr. 27.

In August and September 2013, Plaintiff reported to the state agency that she cared for a dog, performed household chores, mowed the lawn, performed yard work, and prepared meals. (Tr. 87, 319). She prepared dinner daily, but could stand for too long. (Tr. 320). She also cleaned, dusted, and did the laundry. *Id.* Her hobbies and interests included gardening, bible study, and spending time with her grandchildren (playing board games, and swimming together). (Tr. 322). Plaintiff estimated she could walk or stand for ten to fifteen minutes, and walk 40 to 50 feet before needing to rest. (Tr. 323).

At the September 2014 hearing, Plaintiff testified she lived with a friend. (Tr. 40). She dusted and performed "light cleaning" around the house, but could not use a vacuum cleaner. (Tr. 41, 58-59). She last worked in 2007 or 2008 for a cleaning company, but was laid off. (Tr. 42). Plaintiff believed she was disabled due to, *inter alia*, her left foot impairment. (Tr. 51). She had surgery on her left foot two years prior due to fibroids, and still could not wear a pair of shoes on that foot. *Id.* She had fibroids on both feet, but the left "was kind of different." *Id.* When she returned after the surgery, two fibroids had already returned. (Tr. 51-52).

2

Plaintiff testified she drove to the hearing, but did not want to drive because of a problem with her right arm. (Tr. 55).

Plaintiff estimated she could walk slowly for about fifteen minutes before having to stop. (Tr. 61). She walked on the outer edges of her feet to try to stay off the arch. *Id.* Her left foot would sometimes swell, and she had numbness from the ball of her foot to her toes. (Tr. 62). She testified standing was worse than walking. *Id.* When washing dishes, she rested her leg on a chair to prevent it from throbbing. *Id.* She also elevated her legs in the evening to reduce swelling. (Tr. 69).

Relevant Medical Evidence[1]

In November 2012, Plaintiff saw Monica Seo, M.D., for a sinus infection and foot pain. (Tr. 442). Dr. Seo noted cysts on Plaintiff's feet and referred her to a podiatrist. *Id.*

The following month, Plaintiff saw Cassandra Nida, DPM, reporting "lumps" on the bottom of both feet. (Tr. 438-39). She reported they enlarged over time and had recently started to become painful with walking and standing. (Tr. 439). After an examination, Dr. Nida assessed fibroma – bilateral foot. *Id.* Dr. Nida prescribed Plaintiff orthotic inserts, and discussed the possibility of injections. (Tr. 440). Plaintiff opted to postpone further treatment until after trying the orthotics. *Id.*

Plaintiff returned to Dr. Nida later in December 2012 for a steroid injection. (Tr. 426). At her next appointment approximately eight months later, Plaintiff reported the steroid injections had helped relieve her pain, but "some of the smaller lesions have slightly changed position." (Tr.

---

1 The ALJ found Plaintiff had multiple severe impairments, *see* Tr. 19, but in this appeal Plaintiff only challenges the ALJ's determinations regarding her foot impairment, *see* Doc. 14, at 12- As such, the undersigned summarizes only the relevant medical records. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (issued not raised in opening brief waived).

402). Dr. Nida again noted significant pain with palpations over the lesions and again assessed fibroma – bilateral foot. *Id.* Plaintiff opted to undergo surgery to remove her left foot fibroma. *Id.*

At a psychological examination in September 2013, Thomas M. Evans, Ph.D., noted Plaintiff's ambulation was "within normal limits" and she walked unassisted. (Tr. 450); *see also* Tr. 451 ("There were no noted problems with ambulation or gait"). She also sat comfortably in her seat and did not appear to be in any physical distress. *Id.* Plaintiff reported she had a driver's license and could drive. *Id.* She also did her own cooking, cleaning, and laundry, though a friend did her grocery shopping. *Id.*

At an emergency room visit for arm pain in September 2013, Plaintiff denied difficulty walking and "ambulated into ED without difficulty." (Tr. 623); *see also* Tr. 625.

In an October 2013 consultative examination, Marsha Cooper, M.D., noted Plaintiff was applying for disability due to painful lumps on the bottom of her feet, by her arches. (Tr. 460). Plaintiff stated she received care at the Cleveland Clinic for "a bunch of little issues, but no major issues". *Id.* She reported last working in 2009 as the supervisor of a cleaning company. *Id.* ("She did this for four years and was laid off. She has looked for jobs and has been unsuccessful."). Dr. Cooper noted evidence of chronic plantar fasciitis and a number of hard nodules on the plantar surface of her feet bilaterally, "in particular under her arches and up into the forefoot." (Tr. 462). She had a normal, well-balanced gait, with no limping. *Id.*

In February 2014, Plaintiff saw podiatrist Thuan Pham, DPM. (Tr. 745-46). On examination, Dr. Pham noted Plaintiff had multiple raised firm lesions on the plantar side of both feet, with pain to palpation. *Id.* Plaintiff reported past steroid injections and "offloading the area with felt padding with limited success." (Tr. 746). She agreed to undergo surgery. *Id.* Dr. Pham noted Plaintiff was "aware of the recurrence of these plantar fibroma after resection." *Id.*

In March 2014, Plaintiff sought to establish care with Shannon Goldsmith, D.O. (Tr. 556-57). On examination, Dr. Goldsmith noted Plaintiff had tenderness and deformity in her right foot. (Tr. 557). She assessed plantar fascial fibromatosis and referred Plaintiff to a podiatrist to follow up with surgery. (Tr. 558).

That same month, Plaintiff underwent a preoperative assessment. (Tr. 751-52). A functional status report noted Plaintiff was able to "[d]o moderate work around the house such as vacuuming, sweeping floors, or carrying in groceries" and "[c]limb a flight of stairs or walk up a hill." (Tr. 752). She had "limited activity due to foot pain" but "climb[ed] stairs at home." *Id.*

In April 2014, Plaintiff underwent an excision of plantar fibroma on her left foot. (Tr. 537-38). Four days after surgery, Plaintiff was "doing well" and able to tolerate the pain with oral analgesics. (Tr. 766). At her next appointment a little over a week later, Plaintiff reported "doing well overall" and had "no new complaints." (Tr. 770). Dr. Pham instructed Plaintiff to minimize activity, bear weight "as tolerated", and follow up in six to eight weeks. *Id.*

In July 2014, Plaintiff saw Dr. Goldsmith and reported she was "still having issues still having issues with [her left] foot and believe[d] that one of the plantar fascias [was] coming back." (Tr. 550). On examination, Plaintiff's left foot had decreased range of motion, tenderness, and deformity. (Tr. 552). Dr. Goldsmith again assessed plantar fascial fibromatosis and referred Plaintiff to a "new podiatrist." *Id.* She continued to report pain later that month. *See* Tr. 540.

In October 2014, MRIs of both feet revealed plantar fibromatosis. (Tr. 526-29). Specifically, regarding Plaintiff's right foot, the MRI report indicated "plantar fibromatosis at the level of the midfoot/metatarsals and medial aspect of the aponeurosis" and "mild changes of plantar fasciitis at the calcaneal attachment." (Tr. 526-27). Regarding Plaintiff's left foot, the MRI report indicated "plantar fibromatosis involving the far medial extent at the plantar aponeurosis

i[n] the midfoot." And "minimal thickening of the plantar aponeurosis at the calcaneal attachment without overt changes of plantar fasciitis" and "no aponeurotic disruption." (Tr. 529).

A November 2014 note indicated Plaintiff reported pain in both feet. (Tr. 532).

In August 2015, Plaintiff reported she had "tingling in [the] ball of [her] foot to the bottom of [her] toes" and "pain if on foot too long". (Tr. 617).

*Opinion Evidence*

In October 2013, consultative examiner Dr. Cooper opined Plaintiff had "significant plantar fasciitis of the feet with large nodules, which would make standing on a hard surface like cement, for any length of time, painful." (Tr. 462).

That same month, state agency physician Jeffrey Vasiloff, M.D., reviewed Plaintiff's records. (Tr. 93-94). He noted Plaintiff had "plantar fasciitis with large fibromas on her feet" and could perform the exertional requirements of light work[2], except she was limited to occasional climbing of ramps and stairs; no climbing of ladders ropes, and scaffolds; and frequent stooping, kneeling, crouching and crawling. (Tr. 93). He also noted Plaintiff should avoid even moderate exposure to pulmonary irritants, and avoid all exposure to hazards. (Tr. 94).

In March 2014, state agency physician Gary Hinzman reviewed Plaintiff's records and affirmed Dr. Vasiloff's functional capacity findings, with an additional limitation to frequent fingering with the right hand due to carpal tunnel syndrome. (Tr. 135-37).

---

2. The exertional requirements of light work require lifting no more than 20 pounds at a time, with frequent lifting or carrying up to 10 pounds, 20 C.F.R. §§ 404.1567(b); 416.967(b), and standing or walking for approximately six hours in an eight-hour workday, SSR 83-14, 1983 WL 31251, at*6.

In his October 2015 written decision, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through June 30, 2015, and the non-disability requirements for DWB through June 30, 2010. (Tr. 19). Plaintiff had not engaged in substantial gainful activity since September 1, 2008, her alleged onset date. (Tr. 19). Plaintiff had severe impairments of osteoarthrosis and allied disorders, obesity, carpal tunnel syndrome, migraines, and asthma, *id.*, but these impairments did not meet or equal the severity of a listed impairment either individually or in combination. (Tr. 21). The ALJ then concluded Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; frequently stoop, kneel, crouch, or crawl; frequently finger with the right hand; must avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation; and must avoid all exposure to hazards such as unprotected heights, moving machinery, and commercial driving.

*Id.* Based on this RFC and the VE's testimony, the ALJ concluded Plaintiff could perform her past relevant work as a customer service representative (as actually and generally performed) and head cashier I (as generally performed). (Tr. 27-28). Therefore, the ALJ found Plaintiff was not disabled and not entitled to DIB, SSI, or DWB. (Tr. 28).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact

if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) & 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in

the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

<h3 align="center">DISCUSSION</h3>

Plaintiff alleges the ALJ erred in three ways: 1) in the determination of her RFC; 2) in the listing analysis at Step Three; and 3) in the credibility / subjective symptom determination. The Commissioner responds that the ALJ did not err and his decision is supported by substantial evidence. For the reasons discussed below, the undersigned affirms the decision of the Commissioner.

<u>Listing 8.05</u>

Plaintiff contends the ALJ erred in failing to make specific findings with respect to Listing 8.05. The Commissioner responds that the ALJ's failure to do so was "nothing more than harmless, given that the record evidence simply did not support such a determination." (Doc. 17, at 10). The undersigned concludes remand is not required.

The listings streamline the disability decision making process by identifying people whose impairments are more severe than the statutory disability standard, preventing them from performing *any* gainful activity—not just substantial gainful activity—regardless of age, education, or work experience. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citing 20 C.F.R. § 416.925(a); SSR 83-19, at 90). The listings create a presumption of disability making further inquiry unnecessary. *Id.* Each listing establishes specific medical criteria, which a claimant must prove his impairment satisfies to qualify for benefits under a listing. 20 C.F.R. § 404.1525(d); *see*

*also Zebley*, 493 U.S. at 530. It is Plaintiff's burden to establish he meets or equals a listing. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

If the record evidence raises a "substantial question" about whether a claimant meets a listing, the ALJ must explicitly address the listing. *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432-33 (6th Cir. 2014) (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). "A substantial question about whether a claimant meets a listing requires" more than "a mere toehold in the record on an essential element of the listing." *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 642 (6th Cir. 2013). "[T]he ALJ need not discuss listings that the applicant clearly does not meet, especially when the claimant does not raise the listing before the ALJ." *Id.* at 641. "[T]he claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Smith–Johnson*, 579 F. App'x at 432. Thus, in instances where the ALJ does not evaluate a listing, the court must "determine whether the record evidence raises a substantial question as to [Plaintiff's] ability to satisfy each requirement of the listing." *Id.* at 432–33. The claimant "must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Id.* at 432. "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Id.* at 433.

At Step Three, the ALJ did not explicitly address Listing 8.05, but explained generally:

While the record indicates that the claimant has severe impairments, none reaches the level of severity required by the Listing of Impairments, either singly or in combination. No treating or examining physician has indicated findings consistent with the record as a whole that would satisfy the severity requirements of the listed impairments [i]n 20 CFR Part 404, Subpart P, Appendix 1. In reaching this conclusion, the undersigned considered the opinions of the State agency medical and psychological consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process (Exhibits 1A-3A and 7A-9A) and reached the same conclusion (20 CFR 404.1527(f) and 416.927(F) and SSR 96-6p).

(Tr. 21). Thus, the undersigned turns to whether Plaintiff has pointed to record evidence raising a substantial question as to his ability to meet Listing 8.05.

To meet Listing 8.05, a claimant must have dermatitis consisting of "extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. Part 404, Subpt. P. App'x 1, Listing 8.05. Listing 8.00—the introductory listing regarding skin disorders— defines "extensive skin lesions" as "those that involve multiple body sites or critical body areas, and result in a very serious limitation." § 8.00(C)(1). It then provides examples, including: "c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate." *Id.*

Here, the ALJ specifically noted that "[n]o treating or examining physician has indicated findings consistent with the record as a whole that would satisfy the severity requirements of one of the listed impairments . . . ." (Tr. 21). And, although the ALJ did not specifically assess Listing 8.05, the Court finds Plaintiff had not shown the record evidence raises a substantial question about whether her foot fibromas meet the listing, thus requiring the ALJ to discuss it. *See Sheeks*, 544 F. App'x at 642 (claimant "must show that the open question is a *substantial* one that justifies a remand") (emphasis in original).

It is clear from the record that Plaintiff had fibromas on her feet (Tr. 402, 432, 438-39, 460-62, 526-29, 537-38, 540, 550-52, 745-46), but there is little to no evidence to evidence to support that these fibromas "very seriously limit [her] ability to ambulate", § 8.00(C)(1)(c). The only objective findings in the record regarding ambulation are notations of no difficulty, or normal gait. *See* Tr. 450-51 (ambulation "within normal limits" and "no noted problems with ambulation or gait"); Tr. 462 (normal, well-balanced gait, with no limping); Tr. 623 (Plaintiff denied difficulty walking and "ambulated . . . without difficulty."). Although Plaintiff reported pain associated with

walking at times (Tr. 439, 617), the record simply does not raise a "substantial question" as to whether her fibromas "very seriously limit [her] ability to ambulate", 20 C.F.R. Part 404, Subpt. P, App'x 1, Listing 8.00(C)(1)(c), and thus the undersigned finds no reversible error in the ALJ's failure to discuss Listing 8.05 in his decision.

RFC Determination

Plaintiff also contends the ALJ erred with respect to her RFC, specifically as to the limitations imposed by her foot impairments. Plaintiff contends, in essence, that she was incapable of performing more than sedentary work, while the ALJ found her capable of light work.[3] In conjunction with this argument, Plaintiff contends the ALJ erred in his analysis of consultative examiner Dr. Cooper's opinion. The Commissioner responds that substantial evidence supports the ALJ's evaluation of Dr. Cooper's opinion, and the RFC as a whole.

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. §§ 404.1529; 416.929. An ALJ must also consider and weigh medical opinions. §§ 404.1527; 416.927.

An examining, but not treating, source such as Dr. Cooper is one who has examined Plaintiff, but did not have an ongoing treatment relationship. 20 C.F.R. §§ 404.1527 and 404.1502; 20 C.F.R. §§ 416.927(b) and 416.902; SSR 96-2, 1996 WL 374188, at *1. The ALJ is required to weigh the opinion of agency examining physicians under the same factors as treating physicians, including the supportability and consistency of those opinions. *See* 20 C.F.R. §§ 404.1527(d) and 416.927(d). Although the explanatory requirement "does not apply to opinions from physicians

---

3. Plaintiff correctly notes that had she been limited to sedentary work, she would have been deemed disabled by Rules 201.06 and 201.14 of the Medical–Vocational Guidelines. *See* 20 C.F.R. Part 404, Subpt. P, App'x 2.

who . . . have examined but not treated a claimant, the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011). Thus the question is not one of "good reasons" as it is for treating physicians, but rather whether the ALJ's reasoning regarding the weight assigned to Dr. Cooper is supported by substantial evidence.

Dr. Cooper opined Plaintiff had "significant plantar fasciitis of the feet with large nodules, which would make standing on a hard surface like cement, for any length of time, painful." (Tr. 462). The ALJ explained he gave this opinion "limited weight" because it was "imprecise and because Dr. Cooper did not have the benefit of examining the claimant after the foot surgery performed by Dr. Pham in April 2014." (Tr. 26). This reasoning, combined with a review of the ALJ's decision as a whole, is supported by substantial evidence and allows this Court to "trace the path of [the ALJ's] reasoning". *Stacey*, 451 F. App'x at 519.

The undersigned finds the ALJ's reasoning about the "imprecision" of Dr. Cooper's opinion supported. Although Dr. Cooper opined Plaintiff would have pain "standing on a hard surface like cement, for any length of time", he did not opine that she was unable to stand, nor did he put this limitation in concrete terms such as minutes or hours. Moreover, even if this reason is insufficient, the ALJ further addressed the consistency of Dr. Cooper's opinion with the rest of the medical record.

Plaintiff contends it was contradictory for the ALJ to discount Dr. Cooper's opinion because he examined Plaintiff prior to her surgery with Dr. Pham, while at the same time giving great weight to the state agency physician opinions who *similarly* lacked the results of Dr. Pham's surgery. However, an ALJ may rely on medical opinions from physicians who have not reviewed the entire record so long as the ALJ considers the post-dated evidence in formulating her opinion.

*See, e.g., McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (indicating that an ALJ's reliance upon state agency reviewing physicians' opinions that were outdated was not error where the ALJ considered the evidence that was developed post-dating those opinions); *Patterson v. Comm'r of Soc. Sec.*, 2017 WL 914272 at *10 (N.D. Ohio) ("ALJ may rely on a state agency reviewer who did not review the entire record, so . . . long as the ALJ also considers the evidence post-dating the opinion."); *Ruby v. Colvin*, 2015 WL 1000672, at *4 (S.D. Ohio) ("[S]o long as an ALJ considers additional evidence occurring after a state agency physician's opinion, he has not abused his discretion."). Here, the ALJ thoroughly summarized the record both pre-dating, and post-dating the state agency physicians' opinions. *See* Tr. 22-26. Thus, there is no *per se* error in his assignment of great weight to those opinion. To Plaintiff's argument, the ALJ explained that he gave the state agency physicians' opinions great weight because he found them "consistent with the record as a whole including the objective medical evidence, clinical findings on examination, course of treatment, and activities of daily living." (Tr. 26). Thus, there was not (as Plaintiff contends) a contradiction between the ALJ's analysis of Dr. Cooper's opinion and his analysis of the state agency physician opinions.

Although the state agency physicians did not have the benefit of the later records, including Dr. Pham's surgery, the ALJ did, and he specifically reviewed them. *See generally* Tr. 24-25. Specifically, the ALJ cited in support of his determination that Plaintiff's "foot symptoms and limitations are not as severe as alleged" the fact that Plaintiff did not return to see Dr. Pham after April 17, 2014. (Tr. 25); *see also* Tr. 24 (stating the same). This is supported by the record, as there are no further records from Dr. Pham. Although Plaintiff had some further reports of foot pain (Tr. 552, 540, 532, 617), and MRIs showing continued plantar fibromatosis (Tr. 526-29), Plaintiff points to no record of any further treatment for these problems. As such, the ALJ reasonably

concluded Plaintiff's foot impairment was less severe than she alleged. *See, e.g., Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001-02 (6th Cir. 2011) (ALJ properly noted plaintiff's "modest treatment regimen . . . consisting solely of pain medication . . . was inconsistent with a finding of total disability"). This reason—that Plaintiff underwent surgery with Dr. Pham and then received no further treatment—is a supported reason to discount Dr. Cooper's opinion. That is, the ALJ discounted Dr. Cooper's one-time opinion as it was not consistent with the medical evidence.[4]

The ALJ further explained in support of the RFC, that he found Plaintiff's allegations not fully credible. This is discussed in greater detail below. Moreover, he explained Plaintiff's "activities of daily living are not consistent with disabling physical impairment or disabling pain". (Tr. 26). In support, he cited Plaintiff's testimony that she does "light cleaning" around the house Tr. 41, 58-59), and statements at medical appointments that she did not have any difficulty performing or completing daily living activities (Tr. 404, 417, 422, 425, 435, 441, 445,480, 489, 743, 748). These reported daily activities support the ALJ's ultimate RFC determination.

In the conclusion of his RFC determination, the ALJ stated he found it

> supported by the claimant's work history, her activities of daily living, the objective medical evidence, the clinical findings on examination, the treatment records discussed above, the lack of treatment pursued by claimant, the reports from the examining physician and psychologist, and the consultant opinions . . . all of which suggest greater capacity than described by the claimant.

(Tr. 26).Taken as a whole, the undersigned finds the ALJ's RFC determination—including his analysis of Dr. Cooper's opinion—supported by substantial evidence.

---

4. For this same reason, the undersigned rejects Plaintiff's argument that the ALJ's analysis "presumes that Dr. Pham's surgery cured all that erred Plaintiff's feet." (Doc. 14, at 16). Rather, the ALJ relied on the lack of follow up treatment to determine Plaintiff had not shown greater limitations than he found regarding her foot impairment.

Credibility / Subjective Symptoms

Plaintiff contends the ALJ erred in his analysis of the credibility of her subjective report of symptoms. The Commissioner responds that the ALJ's decision is supported by substantial evidence and was not error.

Preliminary, Plaintiff contends this Court should apply Social Security Ruling 16-3p rather than 96-7p, citing other cases from this district that had done so through mid-2017. *See, e.g., Goddard v. Berryhill*, 2017 WL 2190661, at *20 (N.D. Ohio) (collecting cases). However, the Social Security Administration has since stated that SSR 16-3p is not to be applied retroactively. 82 Fed. Reg. 49462, 49468 n.27 (Oct. 25, 2017) ("Our adjudicators will apply this ruling when we make determinations and decisions on or after March 28, 2016. When a Federal court reviews our final decision in a claim, we also explain that we expect the court to review the final decision using the rules that were in effect at the time we issued the decision under review."). The ALJ's decision here is dated October 14, 2015, and thus SSR 96-7p applies. This is so even though the Appeals Council's decision denying review post-dates the effective date of 16-3p, *see* Tr. 1 (denial of review dated January 25, 2017), because when the Appeals Council denies review, the ALJ's decision stands as the final decision of the Commissioner, *see* 20 C.F.R. §§ 404.981; 416.1581; *see also Casey v. Sec. of Health & Human Servs.*, 987 F. 2d 1230, 1233 (6th Cir. 1993). The undersigned therefore reviews the decision of the ALJ under the law in place at the time of his decision.[5]

---

5. Moreover, the Sixth Circuit has characterized SSR 16–3p as merely eliminating "the use of the word 'credibility' ... to 'clarify that the subjective symptoms evaluation is not an examination of an individual's character.' " *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016).

The Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009).

A claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). In determining whether a claimant has disabling pain, the regulations require an ALJ to consider certain factors including: 1) daily activities; 2) location, duration, frequency, and intensity of pain or symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication; 5) treatment, other than medication, to relieve pain; 6) any measures used to relieve pain; and 7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *3 ("20 CFR 404.1529(c) . . . describe[s] the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements"). Although the ALJ must "consider" the listed factors, there is no requirement that the ALJ discuss every factor. *White v.*

*Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009); *Roberts v. Astrue*, 2010 WL 2342492, at *11 (N.D. Ohio).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004) (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony")). An ALJ's finding that a claimant's subjective allegations are not fully supported is a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). Nevertheless, an ALJ's decision to discount a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2. It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. In other words, the reviewing Court is "limited to evaluating whether or not the ALJ's explanations [regarding credibility] are reasonable and supported by substantial evidence in the record". *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Given this limited review, the Sixth Circuit has "held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

Here, the ALJ recited the two-step credibility determination process, and explained:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to

cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. In particular, the claimant's allegations are out of proportion to the medical evidence.

(Tr. 22).[6] Later in his decision, the ALJ discussed the medical evidence and noted that inconsistencies, and failure to follow-up on medical issues led him to determine "that the claimant's symptoms and limitations are not as severe as alleged." (Tr. 25). He made this finding with regard to Plaintiff's headaches, hand, arm, shoulder, and foot limitations. *See id.* Further, he noted "evidence that the claimant's lack of employment is due to reasons other than her physical or mental impairments or limitations", citing her non-substantial gainful activity earnings in 2009 and 2010, and her 2013 report to Dr. Cooper that she was "laid off" in 2009. (Tr. 26).

First, SSR 96-7p provides that a claimant's statements "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure". 1996 WL 374186, at *7. The ALJ was thus justified in discounting Plaintiff's credibility somewhat based on her lack of consistent treatment. The undersigned disagrees with Plaintiff's contention that the ALJ's review of the record was incomplete and thus undermines his credibility determination. Specifically, Plaintiff contends the ALJ ignored evidence of foot pain after Dr. Pham's surgery. The ALJ stated, correctly, that the Plaintiff did not return to Dr. Pham after her April 2014 surgical follow-ups. *See* Tr. 24, 25. Plaintiff contends she "continue[d] to receive treatment for her bilateral foot pain, continuing to express the unremitting pain it caused her while ambulating". (Doc. 14, at 20). The evidence of record Plaintiff points to

---

6. Usage of some boilerplate language by the ALJ with respect to credibility is permissible so long as "the ALJ provide[s] an adequate explanation of the adverse credibility finding." *Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x 162, 174 (6th Cir. 2016).

regarding foot limitations after Dr. Pham's surgery consists of: 1) July 2014 report to Dr. Goldsmith that Plaintiff was "still having issues with [her left] foot and believe[d] that one of the plantar fascias [was] coming back" and examination findings of decreased range of motion, tenderness, and deformity (Tr. 550); 2) October 2014 MRIs revealing plantar fibromatosis in both feet (Tr. 526-29); 3) a November 2014 unsigned treatment note that "[b]oth feet are still in a lot of pain" (Tr. 532); and 4) an August 2015 unsigned treatment note stating Plaintiff had "tingling in ball of foot to the bottom of toes" and "pain if on foot too long". (Tr. 617).[7] Plaintiff is correct that the ALJ did not discuss these records aside from the MRI results. *See* Tr. 24. But an ALJ can consider all the evidence without discussing each piece of the record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) Further, the November 2014 and August 2015 notes are unsigned, and do not report the result of any examination findings, only Plaintiff's subjective reports of pain. *See* Tr. 532, 617. As such, they do not undermine the substantial evidence supporting the ALJ's finding that Plaintiff's minimal treatment suggested she was not disabled. And again, although Plaintiff had ongoing complaints of pain, the question is not one of what *symptoms* a claimant has, but what *limitations* are imposed by those symptoms. *See, e.g. Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002).

Second, ALJ also reasonably considered Plaintiff's daily activities to the extent they were inconsistent with her allegations of disabling limitations. *See* 20 C.F.R. § 404.1529(c)(3); 416.929(c)(3) (in evaluating credibility, an ALJ is to consider, *inter alia*, "daily activities"); *Blancha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). As noted above, the ALJ found Plaintiff's claims of disabling pain inconsistent with her testimony that she did

---

7. Having reviewed these records, the undersigned disagrees with counsel's characterization that these records show Plaintiff "continu[ed] to express the unremitting pain [her foot impairment] caused her while ambulating." (Doc. 14, at 20).

"light cleaning" around the house (Tr. 41, 58-59), and her repeated denials of difficulty performing daily living activities (Tr. 404, 417, 422, 425, 435, 441, 445,480, 489, 743, 748). This inconsistency is further supported by Plaintiff's function report statements that she cared for dogs, mowed the lawn, did yard work, prepared meals, did cleaning and laundry, spent time with her grandchildren, including swimming together. (Tr. 319-22).

Third, the ALJ cited an inconsistency between Plaintiff's claims that she did not work due to disability, and her report to Dr. Cooper that she was "laid off" in 2009, and then tried unsuccessfully to find work. (Tr. 26). Further, the ALJ appropriately noted Plaintiff had performed some work since her alleged onset date, despite such work not rising the level of substantial gainful activity. *See, e.g., Miller v. Comm'r of Soc. Sec.,* 524 F. App'x 191, 194 (6th Cir. 2013) (ALJ did not err by considering ability to maintain part-time employment as one factor relevant to disability determination).

Finally, the undersigned finds Plaintiff's arguments about medication side effects and her prior work history not well-taken. The ALJ acknowledged Plaintiff's prior work history. *See* Tr. 27. Plaintiff contends the ALJ incorrectly determined she did not suffer from side effects of medications. (Doc. 14, at 21) (citing Tr. 26). In support, she cites a March 2013 treatment note from Dr. Seo indicating she had "[m]ore fatigue with gabapentin/but tolerable." (Tr. 412). The ALJ's finding was specifically that "[t]he record does not establish that the claimant's use of prescribed medication is accompanied by side effects *that would interfere significantly* with her ability to perform work within the restrictions outlined in this decision." (Tr. 26) (emphasis added). The undersigned finds the ALJ's determination a reasonable interpretation, even taking into account this particular record.

Taken together, the cited inconsistencies between Plaintiff's subjective reports of disabling impairments and the record as a whole provide substantial evidence to support the ALJ's credibility determination.

Although Plaintiff can point to evidence suggesting a contrary conclusion, this Court must affirm even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. The undersigned finds the ALJ's decision as a whole supported by substantial evidence and therefore affirms that decision.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB, SSI, and DWB supported by substantial evidence and affirms that decision.

 s/James R. Knepp II
United States Magistrate Judge